UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HITACHI MEDICAL SYSTEMS AMERICA, INC., | ) ) ) | CASE NO.5:10CV384 |
| PLAINTIFF, | ) ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | |
| JOEL CHOE, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| DEFENDANTS. | ) ) ) | |

Before the Court is plaintiff's motion for reconsideration or, in the alternative, to certify a question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (Doc. No. 77.) Defendants filed a memorandum in opposition (Doc. No. 81) and plaintiff filed a reply (Doc. No. 86). For the reasons discussed herein, the motion, as presented by plaintiff, is **DENIED**. However, in the process of resolving plaintiff's motion and reconsidering the Memorandum Opinion dated September 30, 2011 (Doc. No. 74) (hereafter, "Opinion"), the Court has *sua sponte* decided to vacate portions of the Opinion, as set forth below.

### I. LEGAL STANDARD

While a motion for reconsideration is not mentioned in the Federal Rules of Civil Procedure, it serves a legitimate and valuable role in certain situations. *Nat'l Union Fire Ins. Co. v. Cont'l Ill. Corp.*, 116 F.R.D. 252, 253 (N.D. Ill. 1987) (citing *Above The Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99 (E.D. Va. 1983)). Such a motion is typically treated as a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e). *McDowell v. Dynamics Corp. of Am.*, 931 F.2d 380, 382 (6th Cir. 1991) (citing *Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir.

1979)). As such, it is not an opportunity for an unhappy litigant to reargue the case. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Motions for reconsideration are not substitutes for appeal nor are they vehicles whereby a party may present arguments inexplicably omitted in prior proceedings. *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991), *aff'd sub nom United States v. Carper*, 22 F.3d 303 (3d Cir. 1994), *cert. denied sub nom Karr v. Carper*, 513 U.S. 1084 (1995).

Generally, there are three major situations that justify a court reconsidering one of its orders: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or to prevent manifest injustice." *Kern-Tulare Water Dist. v. Bakersfield*, 634 F. Supp. 656, 665 (E.D. Cal. 1986), *aff'd in part, rev'd in part*, 828 F.2d 514 (9th Cir. 1987), *cert. denied*, 486 U.S. 1015 (1988) (citations omitted). However, the motion for reconsideration must demonstrate to the court why it should reconsider its decision and set forth strongly convincing facts or law that would induce it to reverse its prior decision. *Shields v. Shetler*, 120 F.R.D. 123, 126 (D. Colo. 1988).

## II. DISCUSSION

**A.     Motion to Reconsider**

**1.     Background**

On September 30, 2011, this Court issued its Opinion denying the parties' cross-motions for summary judgment, but determining certain "individual issues," including whether the following provision in the various Service Maintenance Agreements ("SMA") between the parties was to be treated as a liquidated damages clause, which would be enforceable under Ohio law, or as a penalty, which would be unenforceable:

> Upon the occurrence of an Event of Default, HMSA may, at any time, declare the unpaid balance for the remaining term of this SMA to be immediately due and payable. Any one or more of the following events shall constitute an Event of Default: (i) Customer fails to pay any monies due HMSA pursuant to this SMA; (ii) Customer becomes insolvent, a receiver is appointed for any part of the Customer's property, Customer makes an assignment for the benefit of creditors, or any proceeding is commenced either by or against Customer under any bankruptcy or insolvency laws; or (iii) Customer defaults in any obligation owing HMSA pursuant to this SMA or otherwise.

There is no dispute that, in making its determination on this issue, the Court applied the proper legal standard, as follows:

> Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.

Opinion at 1754 (quoting *Samson Sales, Inc. v. Honeywell, Inc.*, 12 Ohio St. 3d 27 (1984) (Syllabus)). Applying that standard, the Court concluded that the relevant contract provision "is an unenforceable penalty provision and is void under Ohio law." (Opinion at 1766.)

The Court also ruled on two other individual issues: whether plaintiff performed the required preventative maintenance and whether defendant Choe is individually liable on two of the SMAs.

In its motion, plaintiff seeks reconsideration only on the question of whether the liquidated damages clause is enforceable, arguing that the Court "weighed certain facts and made credibility determinations on evidence offered by the parties to arrive at factual determinations, which should have been reserved for the jury." (Motion at 1784, citing Opinion at 1753-57.) Although plaintiff has not sought reconsideration of the two issues now raised *sua sponte*, the

Court has determined that it needs to correct its Opinion to the extent it did make impermissible fact findings. The Court will first address the applicability of the liquidated damages clause, the issue upon which plaintiff seeks reconsideration, and then turn to the two issues it is raising *sua sponte*.

## 2. Reconsideration Regarding the Liquidated Damages Clause

Among the "findings" criticized by plaintiff are those relating to the Court's conclusion that "[t]here is no evidence that the parties had ever negotiated or bargained for this term of the contract, which is clearly a boilerplate term on a pre-printed form contract." (*Id.*, quoting Opinion at 1756.) The motion outlines the evidence relied upon by the Court and the evidence "discounted" by the Court. (Motion at 1784-85.) Asserting that the Court "weighed the credibility of the evidence," the motion also criticizes the Court for stating: "In addition, plaintiff's argument that its damages would be hard to prove is unpersuasive. … It is not believable that the plaintiff would simply have pulled a number 'out of a hat' without some reference to its business records." (Motion at 1785, quoting Opinion at 1757.) Plaintiff argues in its motion that this Court "acknowledged having weighed the credibility of the evidence." (Motion at 1785.)[1]

In opposition to the motion, defendants correctly point out that plaintiff "repeatedly argue[d] in this case that enforceability of the [liquidated damages] clause is an issue properly resolved upon summary judgment[.]" (Opposition at 1863.) "Now, for the first time, [p]laintiff argues that a determination about the enforceability of the [liquidated damages] clause

---

[1] Plaintiff did not attempt to link its argument to any of the three situations recognized in *Kern-Tulare Water Dist.*, *supra*, which constitute grounds for a motion for reconsideration. Since plaintiff is clearly not arguing that there has been an intervening change in controlling law or that new evidence is available, presumably its arguments are raising the need to correct clear error or to prevent manifest injustice. Plaintiff's memorandum in support of its motion is devoted to explaining to the Court why its decision is wrong under the "law concerning liquidated damages clauses" (*see* Doc. No. 77 at 1786-91), in particular, why it is wrong under *Samson Sales*, *supra*.

cannot be made upon summary judgment because a dispute exists as to material facts. Despite having repeatedly stated here 'there are no genuine issues of material facts' and 'that the material facts in this case are not in dispute,' [p]laintiff somehow contends 'this Court did not have all necessary evidence to make underlying factual determinations' and that the decision 'is within the province of the trier of fact.'" (*Id.*, quoting Motion at 1787, 1789.) Defendants are of the view that plaintiff is now raising an entirely new argument, asking the Court to do the opposite of what it asked for at the summary judgment stage.[2] Defendants further deny that there were any material facts in dispute. Finally, defendants assert that plaintiff has failed to challenge the Court's rulings with respect to *all three* of the *Samson Sales* factors.

The *Samson Sales* test states that a contract provision dealing with damages in the event of a breach shall be treated as a liquidated damages clause and not as a penalty if *all* of three conditions are met. *Kurtz v. W. Property, LLC*, No. 10AP-1099, 2011 WL 6916196, at *6 (Ohio Ct. App. Dec. 27, 2011) ("The tripartite test of *Samson Sales* is stated in the conjunctive, and, hence, all three elements must be met.") (citation omitted). Defendants are correct that plaintiff's motion does not challenge this Court's ruling with respect to all three of these conditions. In particular, plaintiff's motion does not challenge the following conclusion of the Court with respect to the second *Samson Sales* element, namely, unconscionability:

> … Here the liquidated damages are determined through a simple mathematical calculation, i.e., the number of payments due on the remainder of the contract after any breach multiplied by the monthly contractual payment, and those damages are not then *adjusted* for present value.[14]
>
> > [14] Further, this amount seems especially unreasonable in light of another contract provision which limits *defendants'* damages in the face of an HMSA

---

[2] Defendants assert that plaintiff's reversal of argument "is also an admission that [p]laintiff violated Federal Civil Rule 11[]" by seeking summary judgment "upon an issue it believed was not suitable for summary judgment." (Opposition at 1864 n. 5.) Defendants argue that this is reason alone to deny the motion. The Court takes no position on whether there was any Rule 11 violation.

> breach to "the amounts paid by Purchaser to HMSA for the Agreement." In other words, if defendants made *one* monthly payment and, thereafter HMSA stopped providing maintenance, causing defendants to stop paying, arguably defendants could recover only their one-month's payment as damages for HMSA's breach, but HMSA could recover the entire balance of the contract if defendants had breached. **This, the Court finds, is unconscionable.**

Opinion, at 1756-57 (footnote in original; italics in original; bold text added).[3] Therefore, even if the Court were to accept as true every argument made by plaintiff in its motion, which it does not do, there would be no need to reconsider the conclusion that the liquidated damages clause in the SMAs is an unenforceable penalty provision because plaintiff has not challenged the Court's conclusion as to the second *Samson Sales* element.

That said, because plaintiff's arguments raise several "red flags" that might be persuasive to a casual reader of the law and this record, the Court will "reconsider" its prior opinion in the sense that it will herein clarify that opinion.

As noted, there is no dispute that the law as expressed by *Samson Sales* governs the analysis.[4] Plaintiff's argument on reconsideration is that this Court, in determining the

---

[3] In *Samson Sales*, defendant Honeywell, Inc. entered into a contract with plaintiff Samson Sales, Inc. under which Honeywell would provide burglar alarm services in exchange for $1500 at installation plus $150 per month for five years. During the term of the contract, a burglary occurred, but Honeywell failed to transmit a burglar alarm to the local police. Samson Sales sued alleging breach of contract and seeking damages in the amount of $68,303 for loss of merchandise occasioned by the burglary. Honeywell refused to pay more than $50 toward the loss, relying on a liquidated damages provision in the contract. The Supreme Court of Ohio concluded, in agreement with the court of appeals, that "the minute type used in the standard contract issued by [Honeywell], as well as a fair construction of the contract provision as a whole, fails to evince a conscious intention of the parties to consider, estimate, or adjust the damages that might reasonably flow from the negligent breach of the agreement." *Samson Sales*, 12 Ohio St. 3d at 29. The court expressly noted: "Surely, Samson, which apparently had some business experience, did not pay $10,500 for the mere possibility of recouping $50 if Honeywell provided no service at all under the terms of the contract. Characteristically, therefore, and by way of analysis, the nominal amount set forth in the contract between Samson and Honeywell has the nature and appearance of a penalty." *Id*.

[4] Unfortunately, although quoting the test set forth by the Ohio Supreme Court in *Jones v. Stevens*, 112 Ohio St. 43 (1925), for "determin[ing] whether a sum named in a contract is intended as a penalty or as liquidated damages," *Samson Sales* was actually a case involving a limitation of liability clause. *See Nahra v. Honeywell, Inc.*, 892 F. Supp. 962, 969 (N.D. Ohio 1995) (noting that Ohio courts have "blurred the distinction between the law governing the enforceability of *liquidated damages* clauses and the law applicable to related, but distinct, *limitation* of liability clauses.") (emphases in original). "Liquidated damages clauses, properly employed, attempt to fix in advance 'reasonable compensation for actual damages.'" *Id*. "However, limitation of liability clauses by definition restrict the amount of compensation available, regardless of the actual damages ultimately suffered." *Id*. Interestingly, the SMAs in the instant case contain both types of clauses. This Court previously ruled that both clauses were

question of law relating to the enforceability of the liquidated damages provision, cherry-picked the facts of record,[5] making the very fact findings and credibility calls that are prohibited under a summary judgment analysis.

Notwithstanding the Court's unfortunate use of the phrase "not believable" when discussing the legal persuasiveness of plaintiff's argument that its damages would be hard to prove[6] (the first *Samson Sales* element), the Court did no more, and no less, than it is required to do under the case law. Specifically, since "[w]hether a particular sum specified in a contract is intended as a penalty or as liquidated damages depends upon the operative facts and circumstances surrounding each particular case," *Samson Sales*, 12 Ohio St. 3d at 28-29, that determination "necessarily involves analysis of the facts of the particular case." *Cad Cam, Inc. v. Underwood*, 36 Ohio App. 3d 90, 96 (Ohio Ct. App. 1987).[7]

Although *Samson Sales* does supply the test to be applied, this Court finds it useful to examine the Ohio Supreme Court case which is the actual source of that test, namely, *Jones v. Stevens*, *supra*. *Jones* dealt with a true liquidated damages clause, not the limitation of

---

unenforceable, the liquidated damages clause because it is actually a penalty (Opinion at 1757), and the limitation of liability clause (eliminating defendants' consequential damages) because it is not conspicuous and was not pointed out or explained to Choe (*id*. at 1760). The instant motion does not challenge the latter conclusion.

[5] Interestingly, plaintiff even criticized the Court for failing to consider "evidence" presented in the affidavits of John Hahn that had been filed in two other cases before two different judges. Apparently belatedly recognizing its failure to make these affidavits part of *this* record at the summary judgment stage, plaintiff cleverly attached the affidavits to the instant motion. This Court explicitly notes, however, that these affidavits were not previously part of the record and could not have been considered on summary judgment. **It would be improper for plaintiff to suggest otherwise when the inevitable appeal is taken.**

[6] The Court stated: "In addition, plaintiff's argument that its damages would be hard to prove is unpersuasive. Plaintiff undoubtedly had some idea as to the average costs it would incur when it set the total contractual cost and the monthly installments. It is not believable that the plaintiff would simply have pulled a number 'out of a hat' without some reference to its business records." (Opinion at 1757.) This, plaintiff now argues, is "weigh[ing] the credibility of the evidence." (Motion at 1785.) Apparently, plaintiff would prefer that this Court *would* conclude, as *no* reasonable jury would or could, that plaintiff indeed *did* just pull a number out of a hat!

[7] Plaintiff acknowledges the need for this "facts and circumstances" analysis, but asserts that this must "follow[ ] the resolution by the trier of fact of the disputed issues of material fact." (Motion at 1788, n. 13.) As already noted, this is an entirely new argument; at the summary judgment stage, plaintiff was adamant that there were no facts in dispute.

liability clause that was found in *Samson Sales* (*see*, n. 4), and better illustrates the nature and purpose of a liquidated damages clause. In *Jones*, plaintiff was a very successful restaurant owner who leased space to operate his restaurant. Several years before his lease expired, he entered into a contract with defendant to operate the restaurant on his behalf. Jones and Stevens negotiated a detailed contract setting forth their mutual expectations regarding all aspects of the business, including liquidated damages for the loss of good will should Stevens breach the contract. As it turned out, Stevens abandoned the restaurant and Jones, despite his best efforts, was unable to restore it to its previous profitability. He sued for damages, including the agreed-upon liquidated damages for loss of good will. The court in *Jones* reversed a lower court's determination that the liquidated damages amounted to a penalty. The court noted that good will is an actual business asset, the value of which "only those who are versed in the requirements, opportunities, and exigencies of a business are qualified with any accuracy to estimate[.]" 112 Ohio St. at 53. It concluded that the parties were "both experienced restaurant men" and that the sum they had fixed in liquidated damages for loss of good will "was [not] so unreasonable and disproportionate as to justify the conclusion that it did not express the true intention of the parties at the time it was made[.]" *Id.*[8]

In light of *Jones*, it becomes clear that, when a court applies the test set forth in *Samson Sales*, "[t]he 'estimation and adjustment' requirement . . . is a threshold burden" on the party seeking to enforce the liquidated damages clause. *Easton Telecom Servs. v. CoreComm Internet Grp.*, 216 F. Supp. 2d 695, 698 (N.D. Ohio 2002) (determining, on summary judgment, that a liquidated damages clause was an unenforceable penalty under Ohio law). Here, as in

---

[8] This recitation makes apparent why *Jones* offers more guidance. It shows how different the contract provision was in *Samson Sales* (*see*, n. 4, *supra)*, where the intent was to limit the liability of a burglar alarm company should there be a burglary, and subsequent loss, despite the installation and operation of the alarm system. The limitation was to apply whether based on negligence or on breach of contract.

*Easton*, and unlike in *Jones*, "the pleadings and motions indicate the parties did not bargain over the language of the liquidated damages clause[.]" *Id*. Here, as in *Easton* and unlike in *Jones*, "the liquidated damages provision was generic language placed on the standard contracts of [HMSA]." *Id*. In fact, defendant Choe stated in an affidavit that "HMSA did not specifically explain the [liquidated damages] clause, its purpose, or its effect . . . prior to the execution of the SMA in 2004 [and . . . that he] did not feel that [he] had any substantive bargaining power to negotiate the essential terms for any of the SMAs as to the purported [liquidated damages] clause or standard terms and conditions." (Opinion at 1755, quoting Choe 10/11/10 Aff. ¶ 19.) "He further assert[ed] that he 'never executed the SMA with any mutual understanding that a single missed payment by one of the MRI Center Defendants on the SMAs would result in the entire balance of the SMAs [sic] remaining term becoming immediately due and payable.'" (*Id.*, quoting Choe 10/11/10 Aff. ¶ 26.)

    Plaintiff's only response, then and now, to this sworn testimony by Choe is that he is an experienced businessman who negotiated several of these contracts, who admitted that he had the opportunity to have the SMAs reviewed by counsel, if he had so chosen, and who further admitted that he had a choice as to whether or not to enter into these agreements. Plaintiff, neither then nor now, refutes Choe's testimony that this language was not discussed or negotiated prior to Choe's signing the SMAs. Plaintiff argues that a party to a contract is presumed to have read what he signed, as if that argument alone addresses the sworn testimony of Choe that he had no understanding that a single missed payment would render the entire contract immediately due and payable. As in *Easton*, "the fact that the liquidated damages provision calls for immediate payment of the full amount otherwise due if the contract had not been breached and does not allow for any reduction for present value, is further evidence that no

real 'estimation or adjustment' ever took place between the parties concerning this clause." *Easton*, 216 F. Supp. 2d at 698. <u>Unlike in *Jones*,</u> HMSA cannot meet its "threshold burden" of establishing that the liquidated damages clause was established through bargaining. This was the same conclusion reached by this Court in its original Opinion. Nothing has changed.

Further, as in *Easton*, HMSA makes an "improbable argument" that "its damages without a liquidation clause would be uncertain and difficult to prove." *Id*. at 699. As this Court concluded in its original Opinion: "Plaintiff undoubtedly had some idea as to the average costs it would incur when it set the total contractual cost and the monthly installments." (Opinion at 1757.) "A breach of the contract would result in the loss of the contract amount, less the expenses saved." *Easton*, 216 F. Supp. 2d at 699. This is in stark contrast to the situation in *Jones* where the good will of a restaurant business was deemed to be a real asset "difficult of exact measurement[.]" 112 Ohio St. at 54.

Relying on *Lake Ridge Academy v. Carney*, 66 Ohio St. 3d 376 (1993), plaintiff challenges this Court's conclusion that "the fact that HMSA still incurs the same employee costs and maintains the same parts inventory is irrelevant, absent proof that these defendants are HMSA's *only* customers." (Opinion at 1757.) *Lake Ridge* is clearly distinguishable. First, the contract at issue there was an option contract. The defendant/appellant Carney had five months within which to timely cancel the contract without penalty; he chose to cancel two weeks after the deadline, and suffered the consequences.[9] Second, the liquidated damages in *Lake Ridge* amounted to *one* year's tuition. The court concluded that, given the school's budgeting process ("which [began] *each year* in January and end[ed] in the fall," *id*. at 382, emphasis added), by

---

[9] Unlike in the instant case, there was no doubt in *Lake Ridge* that Carney understood the liquidated damages clause of his option contract. His letter, received by the school on August 14, was postmarked August 7, but was dated August 1. Clearly, Carney was trying to appear timely in his cancellation of the contract.

the deadline of August 1, it was already committed to its budget for the year and "assumed revenues which included Carney's full tuition[.]" Therefore, it was "not unreasonable to conclude that Lake Ridge's actual damages were the equivalent of one year's full tuition." *Id*. at 383. The court then concluded "with conviction that full tuition is not *disproportionate* to the school's actual damages." *Id.* at 384. The same cannot be said here. There is no evidence that HMSA was budgeting four or five years at a time so that it would not be disproportionate, upon a breach in, for example, the first month of a five-year contract, to collect liquidated damages in the amount of the full five-year contract price. This argument stretches *Lake Ridge* far beyond its limits.

In light of the above discussion, upon reconsideration, the Court determines that there is no need to modify its conclusion with respect to the liquidated damages clause of the SMAs and, therefore, Doc. No. 77, Part 1 is **DENIED**.

3. **Reconsideration of the Issues Raised** *Sua Sponte*

a. **Whether Plaintiff Performed the Required Maintenance**

In the Opinion, the Court concluded that those SMAs that provided for preventative maintenance "twelve (12) times annually" should be construed as requiring "monthly" maintenance.[10]

As the Court looks at its Opinion with respect to this issue (*see* Opinion at 1749-1753), it now concludes that it strayed into the province of the jury with respect to the factual underpinnings for the purpose of the contract and the intent of the parties with respect to the

---

[10] The SMAs had different maintenance requirements. Some were "twelve (12) times annually," whereas others provided for maintenance "quarterly, four (4) times annually," or "six (6) times annually." The Court did not separately analyze each of these provisions, but concluded that its reasoning as to the meaning of "twelve (12) times annually" "would apply equally to these other provisions." (Opinion at 1750, n. 9.) The reconsideration given herein will also apply equally to all provisions.

11

preventative maintenance schedule. Although the Opinion left for the jury the question of whether plaintiff had actually performed the necessary maintenance in compliance with the way the Opinion construed the preventative maintenance provision, the Court now concludes that it should have left to the jury both the meaning of "twelve (12) times annually," especially how to interpret it in light of the parties' intent at the time they enter their contracts, and then whether maintenance had been performed in compliance with that interpretation. Much of the law set forth at page 1751 of the Opinion will be appropriate for inclusion in jury instructions.[11]

Accordingly, upon *sua sponte* reconsideration, the Court concludes that, although the preventative maintenance provisions of the SMAs were, as a matter of law, material to the SMAs, it is for the jury to decide the parties' intent as to the meaning of these provisions with respect to the actual schedule of maintenance under each contract *and* whether plaintiff performed according to that schedule. To that extent, the Court **VACATES** section III, B, 1, b of the Opinion.

### b. Whether Choe is Individually Liable

Plaintiff has asserted that defendant Choe is individually liable on two of the SMAs: the one relating to the California CT (CXR46215) and the one relating to the California MRI (A064). In the Opinion, the Court concluded that Choe is individually liable on the former, but not on the latter.

Upon reconsideration, the Court concludes that it made credibility determinations with respect to the facts as they related to the SMA for the California MRI, specifically as to

---

[11] Regardless of the meaning attached to the preventative maintenance provisions, the Court sees no reason to reconsider the legal conclusion that the provisions are *material*, such that, if they were breached by plaintiff, such breach would excuse performance by defendants. There is no doubt on this record that maintenance was a material term of the SMAs.

whether HMSA could "honestly say" that it was unaware that Choe might have been acting as an agent for a principal.[12] This was inappropriate on summary judgment.

Therefore, the Court **VACATES** section III, B, 1, e, 2) dealing with Choe's individual liability with respect to the SMA dealing with the California MRI.

### B. Motion to Certify an Interlocutory Appeal

With respect to the decision relating to the enforceability of the liquidated damages provision, plaintiff seeks, in the alternative to reconsideration, an order certifying an interlocutory appeal. This Court may certify an interlocutory appeal of its prior order if the Court "shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b).

Interlocutory appeals should be granted only in exceptional circumstances and should be used sparingly to avoid protracted and expensive litigation. *Cardwell v. Chesapeake & Ohio R.R. Co.*, 504 F.2d 444, 446 (6th Cir. 1974). An interlocutory appeal is "not intended as a vehicle to provide early review of difficult rulings in hard cases," and "the burden of showing exceptional circumstances exist warranting an interlocutory appeal rests with the party seeking such review." *Infocision Mgmt. Corp. v. Found. for Moral Law, Inc.*, Nos. 5:08CV1342/1412,

---

[12] Initially, an SMA for the California MRI was executed between HMSA and KC Imaging, with Choe signing as KC Imaging's agent. Due to delays, a second SMA for the California MRI was later executed. That SMA showed "Hilltop MRI" as the "purchaser" and it was signed by Choe. However, Hilltop MRI was a non-existent entity at the time. HMSA argued on summary judgment that, because Choe held himself out as the agent of a non-existent entity, he should be held individually liable. The Court originally determined that HMSA should have known that, in light of the history with the earlier SMA signed by Choe on behalf of KC Imaging, that Choe was acting as an agent. This, however, is a fact call.

2010 WL 4365514, at *9 (N.D. Ohio Oct. 27, 2010) (internal quotation marks and citations omitted).

Ultimately, allowing certification of an interlocutory appeal lies within the discretion of the district court. *Swint v. Chambers Cnty. Comm'n,* 514 U.S. 35, 47 (1995).

### 1. *Controlling Question of Law*

"A controlling question of law exists where a question is potentially dispositive of a case or could result in a reversal of judgment after a final hearing." *Lang v. Crocker Park, LLC*, No. 1:09CV1412, 2011 WL 3297865, at *2 (N.D. Ohio July 29, 2011) (citations omitted).

Plaintiff asserts that the "legal question" that should be certified for interlocutory appeal is: "Whether disputed issues of material fact related to the three (3) *Samson Sales* liquidated damages factors must be decided by the trier of fact prior to the Court determining, as a matter of law, whether the liquidated damages provision is enforceable?" (Motion at 1783.)[13] Defendants oppose certifying an interlocutory appeal, arguing that there is no controlling question of law, but that plaintiff is merely challenging this Court's application of the correct legal precedent (i.e., *Samson Sales*) to this particular factual situation.

The Court concludes that the "legal question" plaintiff seeks to certify for interlocutory appeal is no more than an attempt to obtain early review of this Court's ruling. Although the court in *Samson Sales* did state that "[w]hether a particular sum specified in a

---

[13] The Court notes again that, when HMSA moved for summary judgment, it made the argument that *there were no material facts in dispute* and that, based on the facts before the Court, it was entitled to summary judgment on both liability and damages. (*See* Doc. No. 34 at 655 ("the material facts in this case cannot be disputed, and HMSA is entitled to judgment as a matter of law on Count One of its First Amended Complaint."); Doc. No. 34 at 659 (identifying the liquidated damages due under each SMA).) Now that the Court has ruled otherwise, HMSA claims there were factual disputes and, moreover, that it has additional evidence to submit to a jury. (*See*, Reply, Doc. No. 86 at 2162.) In its summary judgment papers, HMSA never independently argued the enforceability of the liquidated damages clause. It made those arguments only in response to defendants' challenge of its enforceability and even then, in its reply brief on summary judgment, HMSA steadfastly asserted that the undisputed facts of record supported its position that the liquidated damages provision should be enforced. (*See* Doc. No. 50 at 1552-56.)

contract is intended as a penalty or as liquidated damages depends upon the operative facts and circumstances surrounding each particular case," 12 Ohio St. 3d at 28-29, until now, HMSA has steadfastly argued that the undisputed operative facts of record entitled it to recovery of liquidated damages. The Court disagreed and stated its reasons. HMSA has not argued that this Court applied the wrong legal standard; rather, it argues that the Court applied the right legal standard but did so incorrectly. That is a matter for direct, not interlocutory, appeal.

### 2. *Substantial Ground for Difference of Opinion*

"[S]ubstantial ground for differences of opinion" exists where few cases have addressed a legal question and appear to have reached different conclusions or when a court's holding is novel. *Nguyen v. City of Cleveland,* 138 F. Supp. 2d 938, 939 (N.D. Ohio 2001).

Plaintiff argues that a substantial ground for difference of opinion is proven by the fact that "there have been multiple inconsistent rulings by Judges within the Federal District Court, Northern District of Ohio, all involving virtually identical liquidated damages provisions[.]" (Motion at 1793-94, citing *HMSA v. Adirondack Diagnostic Imaging of Albany, Inc.*, Case No. 5:09cv2614 (Dowd, J.); *HMSA v. Trinity Health Care LLC*, Case No. 1:06cv3072 (Wells, J.); *HMSA v. Advanced Med. Res., Inc.*, Case No. 5:09cv914 (Adams, J.); *HMSA v. Horizon Med. Grp., Inc.*, Case No. 5:07cv2035 (Lioi, J.).) HMSA cites a fifth case before Judge Gwin, but does not identify the case. Defendants argue that there is no substantial ground for difference of opinion and distinguish each of the cases cited by HMSA.

HMSA's assertion that there is "substantial ground for difference of opinion," as evidenced by different results on this very issue in four other cases in this district, is simply without basis. First, the Court notes that, even if that were true, it would likely be because the "operative facts and circumstances" in each case were different. Under one set of operative facts

15

and circumstances a liquidated damages clause in a contract might be treated as a penalty, whereas under different facts and circumstances the same clause would not be a penalty. That said, plaintiff's citation to the four other cases as support for its argument is disingenuous.

First, in *Trinity Health Care* (Wells, J.), summary judgment was precluded because there were clear factual disputes in the record relating to whether HMSA's damages were difficult or easy to ascertain (for purposes of analysis under *Samson Sales*). In particular, questions arose because, after the defendants in the case had terminated their SMAs (which constituted a breach), HMSA entered into new SMAs with the entities that had purchased defendants' assets. Judge Wells concluded that there were material triable issues of fact "regarding the cost savings to [HMSA] from relief from performance, which necessarily raises an issue regarding the reasonableness of a clause requiring payment without estimation of profit." 2008 WL 1809080, at *4. Further, Judge Wells found material factual disputes relating to the role, if any, of mitigation with respect to determination of damages.[14] Clearly, the operative facts in *Trinity Health Care* bear no relationship to those in the instant case.

Second, in *Horizon Medical Group* (Lioi, J.), a case tried to a jury, the issue as to the enforceability of the liquidated damages clause was never raised and never decided, nor was it the subject of any jury interrogatory, notwithstanding HMSA's assertion here that the verdicts "includ[ed] liquidated damages[.]" (Motion at 1794.)

Third, in *Adirondack Diagnostic* (Dowd, J.), summary judgment was granted on HMSA's breach of contract claim, but Judge Dowd requested briefing on the amount of damages, which he said could not be determined from the summary judgment briefing and supporting documentation. When HMSA filed the requested brief, it stated explicitly that its

---

[14] Mitigation has never been raised as an issue in this case.

damages calculation "is not reliant or dependent on the use or application of the [liquidated damages] clause in the SMA, which does not apply in this case." (Case No. 5:09cv2614, Doc. No. 46 at 574.) After full briefing on damages, Judge Dowd scheduled an evidentiary hearing (not a jury trial), but the parties entered into a stipulated judgment prior to the hearing.

Finally, in *Advanced Medical Resources* (Adams, J.), HMSA's motion for summary judgment was granted, but HMSA was required to submit proof of its damages, fees, costs, and interest. (Case No. 5:09cv914, Doc. No. 71 at 1236.) In ruling on the motion, Judge Adams noted that "[d]efendants put forth significant effort in an attempt to persuade the Court that the [liquidated damages] clause as stated in the SMA is an unenforceable penalty provision." *Id*. at 1226. However, Judge Adams "decline[d] to address the validity of the [liquidated damages] clause as it is not the vehicle [HMSA] seeks to use to support its breach of contract claim." *Id*. at 1227.

None of these four cases offers a basis for concluding that there is "substantial ground for difference of opinion" with respect to this Court's ruling in the instant case.

### 3. *Material Advancement of Ultimate Termination of Litigation*

An appeal will "materially advance the ultimate termination of litigation" if "certification [for the interlocutory appeal] will permit outcome-determinative legal issues to be resolved before the parties and the [c]ourt expend valuable resources on further litigation." *JP Morgan Chase Bank, N.A. v. First Am. Title Ins. Co.,* 725 F. Supp. 2d 619, 625 (E.D. Mich. 2010) (citing *Simon v. Brentwood Tavern, LLC (In re Brentwood Golf Club, LLC*), 329 B.R. 239, 242 (E.D. Mich. 2005)).

HMSA asserts that an immediate appeal may materially advance the termination of the litigation by allowing the Sixth Circuit to determine whether this Court's legal conclusion

with respect to the liquidated damages clause is correct. Plaintiff further argues that it will be entitled to actual damages, if not liquidated damages, and "the evidence of actual damages will overlap with the issues involved in the liquidated damages analysis (e.g., with respect to lack of cost savings)." (Reply at 2166.) This argument seems to suggest that, if HMSA is found on interlocutory appeal to be entitled to liquidated damages, there would be less (or no) evidence on damages required at trial, which would "materially advance the termination of the litigation." Plaintiff also argues that, if this Court's position is wrong, without an interlocutory appeal immediately establishing that fact, time and resources will be wasted because, after the case is overturned on appeal, everyone, including the Court, will have to relitigate the entire case.

Defendants argue that an immediate appeal will not materially advance the ultimate termination of this litigation, first, because it does not involve a question of law which might control the outcome of the case, and, second, because plaintiff's argument relating to the need to avoid additional litigation expenses has been rejected by this court. *See, e.g.*, *Lane*, 2011 WL 3297865 at *5 (denying certification where defendants "failed to persuasively show how this case requires exceptional expenses and time to warrant a certification of appeal[,]" because "time, expenses, and judicial resources are involved in all cases").

The Court does not find plaintiff's argument persuasive. Any time a case is overturned on appeal, time and resources must be dedicated to relitigation. If an interlocutory appeal is allowed, the court of appeals may very well affirm this Court and, in that circumstance, time and resources would *still* have been wasted−on a needless appeal. The better practice is to complete the entire case and then let an appeal proceed on all issues. Furthermore, if this Court *is* wrong and the liquidated damages clause is enforceable, the amount of damages will be easily

resolved by simple reference to the liquidated damages clause itself: damages will be the "unpaid balance for the remaining term of [each] SMA."

### III. CONCLUSION

For the reasons set forth, plaintiff's motion for reconsideration or, in the alternative, for an order certifying an interlocutory appeal (Doc. No. 77) is **DENIED**. However, upon reconsideration, the Court *sua sponte* **VACATES** portions of its Opinion dated September 30, 2011, as set forth above.

**IT IS SO ORDERED**.

Dated: September 26, 2012

                                              **HONORABLE SARA LIOI**
                                              **UNITED STATES DISTRICT JUDGE**