UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HITACHI MEDICAL SYSTEMS AMERICA, INC., | ) ) ) | CASE NO. 5:10 CV 384 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | |
| JOEL CHOE, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| DEFENDANTS. | ) ) | |

Before the Court is defendants' and counterclaimants' (collectively, "defendants") motion to strike and exclude plaintiff's supplemental disclosures and interrogatory responses (Doc. No. 87), plaintiff's memorandum in opposition (Doc. No. 88), and defendants' reply (Doc. No. 89). For the reasons set forth herein, the motion is **DENIED**.

## I. FACTUAL BACKGROUND

On February 22, 2010, plaintiff Hitachi Medical Systems America, Inc. ("HMSA") filed a complaint against Joel Choe (d/b/a Cedar Hill Imaging, Hilltop MRI, Hilltop MRI and X-ray Imaging, and Hilltop Imaging & Diagnostic Center) and Image Makers, Inc. seeking damages and other relief for alleged violations by defendants of certain Service Maintenance Agreements ("SMA") executed between the parties. (Doc. No. 1, as amended on May 20, 2010 by Doc. No. 16.)

On April 28, 2010, HMSA served defendants with their initial disclosures, including, pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii), "a computation of each category of damages claimed by the disclosing party[.]" HMSA's disclosure stated:

3.      [HMSA] states that it's [sic] claimed damages include:

A.      Compensatory damages in excess of $665,613.38, plus interest, as a result of Defendant(s)' breach of the SMA's.

B.      [HMSA]'s damages are based on the terms of the SMAs, specifically the acceleration provisions contained therein. Accordingly, [HMSA] seeks payment of the balance of payments due under the SMAs, totaling $665,613.38, as follows:

1.      $67,780.05 invoiced and past due; plus

2.      $597,833.33 in remaining payments due under the SMA.

C.      Attorneys fees, costs and expenses in amounts not yet determined.

(Doc. No. 87 at 2210.)

On September 20, 2011, this Court issued a Memorandum Opinion and Order denying cross-motions for summary judgment, finding material facts in dispute. The Court, however, made several legal rulings, including a determination that the "acceleration clause" in each SMA[1] upon which HMSA relied for its damages was an unenforceable penalty provision that is void under Ohio law. (Doc. No. 74.) On a motion for reconsideration, the Court upheld this conclusion.

On November 20, 2011, HMSA supplemented its initial disclosures as follows:

_____

[1] This clause provided:

Upon the occurrence of an Event of Default, HMSA may, at any time, declare the unpaid balance for the remaining term of this SMA to be immediately due and payable. Any one or more of the following events shall constitute an Event of Default: (i) Customer fails to pay any monies due HMSA pursuant to this SMA; (ii) Customer becomes insolvent, a receiver is appointed for any part of the Customer's property, Customer makes an assignment for the benefit of creditors, or any proceeding is commenced either by or against Customer under any bankruptcy or insolvency laws; or (iii) Customer defaults in any obligation owing HMSA pursuant to this SMA or otherwise.

HMSA's actual compensatory damages consist of amounts past due under the SMAs plus the future payments due under the SMAs (which amounts are set forth above). The cost savings to HMSA from being relieved of having to provide services to Defendants for the full term of any given service maintenance agreement is miniscule, if any. That is, HMSA incurred the same ongoing and fixed overhead costs regardless of Defendants' failure to carry out their obligations under the SMAs. Therefore, HMSA's compensatory damages, whether actual or liquidated, total $1,020,623.41 (as set forth above in detail).

(Doc. No. 87 at 2215.)[2]

HMSA's responses to the defendants' First Set of Interrogatories, however, failed to disclose that HMSA would be seeking actual damages. For example, Interrogatory No. 10 asked:

Identify separately the: (1) profits, (2) expenses, and (3) revenues associated with the service [HMSA] provided to each Defendant pursuant to the service

---

[2] The "detail" with respect to the amounts owed on each SMA was supplemented as follows:

HMSA hereby supplements Paragraph 3 of its Initial Disclosures and states that its claimed damages include the following:

HMSA claims compensatory damages totaling $1,020623.41, as follows:

- **H067 − $230,468.36**
  $106,968.36      Currently Due ($30,968.36−outstanding invoices plus $76,000.00 in SMA payments through Nov. 2011).
  $123,500.00      Future due for the remaining SMA term (through Feb. 2014).

- **CXR46222 − $283,530.05**
  $250,280.05      Currently Due ($31,780.05−outstanding invoices plus $218,500.00 in SMA payments through Nov. 2011).
  $33,250.00      Future due for the remaining SMA term (through Jun. 2012).

- **CXR46215 − $360,000.00**
  $360,000.00      Currently Due ($36,000.00−outstanding invoices plus $270,000.00 in SMA payments through Nov. 2011).
  $54,000.00      Future due for the remaining SMA term (through Sept. 2012).

- **A064 − $146,625.00 (SMA expired Oct. 31, 2011)**
  $146,625.00      Currently Due ($57,375.00−outstanding invoices plus $89,250.00 in SMA payments through expired SMA term).

(Doc. No. 87 at 2214.)

3

maintenance agreement(s) for the Defendants' medical equipment serviced by [HMSA].

> HMSA responded as follows on or about August 12, 2010:

> In addition to the general objections, HMSA objects to this Interrogatory to the extent it seeks HMSA's confidential and/or proprietary information. Subject to and without waiving the foregoing objections, HMSA states that it did not track, and does not have records reflecting, its profits or expenses associated solely with respect to service HMSA provided to Defendants under the agreements at issue. Regarding HMSA's revenues related to the service agreement at issue, documents containing responsive information will be produced or made available for inspection and/or copying at a mutually agreeable date and time, and subject to the August 4, 2010 Protective Order (ECF 24). See Fed. R. Civ. P. 33(d). See also, HMSA's Response to Request for Production No. 9.

(Doc. No. 32 at 589.) Notwithstanding that response, on November 10, 2011, after this Court ruled that the liquidated damages provision (the so-called acceleration clause) of the SMAs was unenforceable, HMSA supplied the following supplement to its response to Interrogatory No. 10:

> In addition to the general objections, HMSA objects to this Interrogatory to the extent it seeks HMSA's confidential and/or proprietary information. Subject to and without waiving the foregoing objections, HMSA states that the requested amounts cannot be calculated, as HMSA does not track its profits or expenses associated with service HMSA provided to a particular Defendant under a particular service maintenance agreement. *See e.g.*, John Hahn deposition testimony given in this case, in *Hitachi Medical Systems America, Inc. v. Advanced Medical Resources, Inc, et al.*, and in *Hitachi Medical Systems America, Inc. v. Open MRI Solutions, LLC*; Lance Cain deposition testimony given in *Hitachi Medical Systems America, Inc. v. Advanced Medical Resources, Inc, et al*; Sharon Polon deposition testimony given in *Hitachi Medical Systems America, Inc. v. Open MRI Solutions, LLC*; and James Confer deposition testimony given in *Hitachi Medical Systems America, Inc. v. Open MRI Solutions, LLC*. *See also*, the Affidavits of John Hahn submitted in this case, in *Hitachi Medical Systems America, Inc. v. Open MRI of Naples, Inc.*, and in *Hitachi Medical Systems America, Inc. v. Adirondack Diagnostic Imaging of Albany, Inc.*; and the Affidavits of James Confer, Lance Cain, and Sharon Polon submitted in *Hitachi Medical Systems America, Inc. v. Open MRI of Naples, Inc, et al*.

> With respect to HMSA's revenues for services HMSA provided to Defendants under the agreements, HMSA refers to additional documents being produced herewith, which documents are identified as Bates Nos. HMSA CHOE 000589-000601. See Fed. R. Civ. P. 33(d).

(Doc. No. 87 at 2215-16.) Similarly, Interrogatory No. 20 asked HMSA to "identify who calculated your alleged damages in this case and what documents were relied upon or consulted in making such computation." HMSA originally objected to responding, on the ground of attorney-client privilege and work product. However, on November 10, 2011, HMSA supplemented its response as follows:

> Subject to and without waiving the general objections, HMSA states that Sharon Polon calculated the amount of HMSA's compensatory damages in this case, and Ms. Polon referred to documents including the agreements at issue and internal accounting records. HMSA further states that John Hahn provided information concerning HMSA's general business model relating to service costs and expenses as relevant to HMSA's costs and/or actual damages.

(*Id*. at 2216.)

On November 28, 2011, defendants filed the instant motion to strike. It is fully briefed and ripe for determination.

## II. DISCUSSION

Defendants argue in their motion that plaintiff's supplemental disclosures and responses to discovery should be stricken because they include production of new documents and references to affidavits and deposition testimony from other proceedings, some of which were generated after the discovery cutoff in this case. In addition, defendants assert that plaintiff is trying to change its theory of damages from one of recovery under the liquidated damages/acceleration clause of the SMA to one of actual damages, and that plaintiff is doing so despite having steadfastly insisted throughout these proceedings that it has never, and cannot, compute actual damages because it does not maintain records with respect to individual SMAs. Defendants assert that plaintiff is making this change of theory due to the Court's rejection of the liquidated damages/acceleration clause.

5

Plaintiff opposes the motion, arguing that "Defense Counsel is well-versed on HMSA's claims and the computation of HMSA's damages[]" because "Defense Counsel . . . solicit[s] clients representing how the consistencies between various HMSA lawsuits allow him to 'pass along strategies that proved successful.'" (Doc. No. 88 at 2243, quoting 2258.) Plaintiff's brief sets out the alleged "consistencies," particularly pertaining to damages, between and among some of its various cases in the Northern District of Ohio, including *HMSA v. Open MRI Solutions*, Case No. 5:09 CV 1375 (Adams, J.), *HMSA v. Advanced Medical Resources, Inc.*, Case No. 5:09 CV 914 (Adams, J.), and *HMSA v. Horizon Medical Group, Inc.*, Case No. 5:07 CV 2035 (Lioi, J.). Plaintiff asserts that "the identical evidence goes directly to HMSA's damages in [this case]." (*Id.* at 2245.) Plaintiff asserts that its damages "are based upon the remaining payments due under the SMAs." (*Id.*) Notwithstanding the fact that this Court has already determined that payment under the liquidated damages/acceleration clause (i.e., payment of the "remaining payments" under each SMA) is impermissible because the clause is not enforceable, plaintiff insists that it is entitled to these "actual damages." (*Id.* at 2246, citing Doc. No. 77 at 1795-96.) Finally, plaintiff asserts that it actually had no duty to supplement its disclosures because they provide nothing new.

Defendants argue in reply that plaintiff should be held to its specifically-declared theory of damages, namely, damages under the liquidated damages/acceleration clause, and should not be allowed to belatedly change its theory to one of actual damages just because this Court has now determined that the liquidated damages/acceleration clause is unenforceable. Further, defendants assert that plaintiff's choice of damages in other cases is irrelevant because defendants were entitled to know what theory of damages plaintiff will rely on it *this* case with enough advance notice to permit adequate discovery. Defendants assert that permitting plaintiff

6

to change its theory of damages is not substantially justified and introduction of "evidence of actual or compensatory damages that is comprised of profits, saved costs, fixed costs, or any other theory other than premised upon unpaid past invoices," would unduly prejudice defendants. (Doc. No. 87 at 2205.)

Fed. R. Civ. P. 26(a)(1)(A)(iii) requires a party to provide opposing parties with "a computation of each category of damages claimed by the disclosing party[.]" Thereafter, under Rule 26(e)(1), a party "must supplement or correct its [initial] disclosure or response [to discovery]: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" "If a party fails to provide information . . .as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Here, in its initial disclosures, plaintiff opted to pursue damages "based on the terms of the SMAs, specifically the acceleration provisions contained therein." (Doc. No. 87 at 2210.) This was consistent with plaintiff's complaint, which sought in excess of $1 million "pursuant to the terms of the Agreements[.]" (Doc. No. 16 at 140.)

Citing *Mentor Lagoons, Inc. v. Laity*, 1985 WL 9999, at *1 (Ohio Ct. App. May 24, 1985), plaintiff argues that its late disclosure was substantially justified because it would not have been permitted to seek recovery of both actual damages and liquidated damages and it was this Court's ruling on the unenforceability of the liquidated damages/acceleration clause that made it possible to pursue the alternative theory of actual damages. Plaintiff's argument is disingenuous. *Mentor Lagoons* stands only for the proposition that a party cannot *recover* both

7

forms of damages; it does not prohibit *seeking* damages under alternative theories, nor could it do so under either the rules of pleading, which permit pleading alternative theories of recovery. *See* Fed. R. Civ. P. 8(d)(2); Ohio R. Civ. P. 8(E)(2). Plaintiff did not set forth alternative theories; rather, it asserted damages based "specifically [on] the acceleration provisions contained [in the SMAs]." Doing so was perfectly permissible; however, it narrowed plaintiff's options after this Court ruled that the liquidated damages/acceleration clause is an unenforceable penalty.

Plaintiff's pleading a specific theory of recovery, as well as its response to defendants' interrogatories relating to damages, also narrowed the scope of discovery and, supplementing with a new theory at this juncture, after discovery is over, significantly prejudices defendants. That said, given the Court's ruling relative to the liquidated damages/acceleration clause, the Court will permit the plaintiff's supplemental responses to stand. However, in order to ameliorate any prejudice to defendants from this late disclosure, the Court will permit *defendants only* leave until December 7, 2012 to conduct whatever additional discovery they need as a result of the supplemental information. Failure of plaintiff to fully and timely cooperate with all proper discovery requests regarding its claim for damages may result in sanctions, up to and including dismissal of its claims.

## III. CONCLUSION

For the reasons discussed herein, defendants'/counterclaimants' motion (Doc. No. 87) to strike and exclude plaintiff's supplemental disclosures and interrogatory responses is **DENIED**. Defendants, however, shall be granted leave until December 7, 2012 to conduct additional discovery.

The Court will, by separate order, schedule the Final Pretrial Conference for 10:00 a.m. on Thursday, January 3, 2013 and a jury trial on a standby basis during the two-week period beginning January 14, 2013.

**IT IS SO ORDERED**.


Dated: September 26, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**